**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:23-cr-45 |
| vs. | : | JUDGE WATSON |
| BERNARD MCMILLON. | : | |
| Defendant. | : | |

**BERNARD MCMILLON'S SENTENCING MEMORANDUM**

**I.    INTRODUCTION.**

On June 26, 2024, Bernard McMillon (hereafter "Bernard" or "Mr. McMillon" alternately) entered a plea of guilty to Counts 2 and 3 of a five-count Indictment filed against him. Count 2 charged Mr. McMillon with Conspiracy to Distribute and Possess With Intent to Distribute Controlled Substances per 21 U.S.C. §§841(a)(1), (b)(1)(B)(vi), (b)(1)(B)(viii), (b)(1)(C), and 846. Count 3 charged him with Possession of a Firearm in Furtherance of a Drug Trafficking Crime per 18 U.S.C. 924(c)(1)(A)(i). Mr. McMillon is now before the Court for sentencing. The Court is tasked with imposing "a sentence sufficient, but not greater than necessary," to vindicate Congress' sentencing mandate, set forth in 18 U.S.C. § 3553(a)(2). The Court must begin sentencing proceedings by first correctly calculating the applicable guideline range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007). However, this guideline range is only "the starting point and the initial benchmark." The Court "may not presume that the guideline range is reasonable." *Id.* at 596-97. A sentencing court is "free to make its own reasonable

1

application of the 18 U.S.C. § 3553(a) factors, and to reject (after due consideration) the advice of the guidelines." *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring). "[E]xtraordinary circumstances [are not required] to justify a sentence outside of the guidelines range." *Gall* at 595.

**II.     SENTENCING FRAMEWORK AND OBJECTIONS**

Per the calculation by the U.S. Probation Office, Mr. McMillon carries an offense level of 21 and a Criminal History Category of VI. At these parameters, the advisory guideline range is 77-96 months on Count 2, consecutive to 60 months on Count 3. There are no objections to these calculations. In fact, the parties have an agreement pursuant to 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which calls for a sentence of 60-84 months incarceration on Count 2 consecutive to 60 months incarceration on Count 3 (or put another way, a total sentence of 120-144 months)

Using this framework, Mr. McMillon submits that a sentence of **120 months** would adequately reflect the seriousness of his offense, promote respect for the law and provide just punishment. The requested sentence would reflect the punitive aspects of sentencing while recognizing Mr. McMillon's significant past background issues which have played no small part in his actions.

**III.     SENTENCING FACTORS—18 U.S.C. § 3553(a).**

The final step of the sentencing analysis requires this Court to determine what sentence is sufficient, but not greater than necessary, to satisfy Congress' sentencing mandate. Counsel points to the following three § 3553(a) factors to answer this statutory question: (1) Bernard's history and characteristics; (2) the nature and circumstances of the offense and (3) the sentencing range called for by the plea agreement. In the end, counsel submits that a sentence of 120 months would vindicate Congress' sentencing mandate as it would not diminish the seriousness of his offense, and would provide just punishment, adequate deterrence and protection of the public.

a.  **BERNARD MCMILLON'S HISTORY AND CHARACTERISTICS— § 3553(a)(1).**

Bernard McMillon's story has been one of struggle. Bernard has come from people who struggled. Those people struggled to provide a childhood with any semblance of stability and security for Bernard, and in turn he grew into an adult with his own struggles. Still, there is hope that the future will bring an end to this cycle of struggle.

Consider, Bernard's Pre Sentence Report illustrates a childhood in which his mother and father both struggled with substance abuse. Bernard's childhood was dotted with firsthand childhood experiences of either witnessing or being a part of traumatic events.

"[I]t is clear that adverse childhood experiences have a profound, proportionate, and long-lasting effect on emotional state, whether measured by depression or suicide attempts, by protective unconscious devices like somatization and dissociation, or by self-help attempts that are misguidedly addressed solely as long-term health risks." Vincent J. Felitti & Robert F. Anda,

4

*The Relationship of Adverse Childhood Experiences to Adult Medical Disease, Psychiatric Disorders, and Sexual Behavior: Implications for Healthcare 7*, in The Hidden Epidemic: The Impact of Early Life Trauma (2009) (R. Lanius and E. Vermetten, eds.),

Bernard was no stranger to these factors, having witnessed domestic violence at home as well as death and decay in the streets. At age ten, Bernard witnessed an individual get shot and killed. It is clear from his history that no one thought to address the impact this had on young Bernard. Sadly, this would become typical for the gun violence and drug trafficking Bernard witnessed during his formative years, culminating in the death of his brother when Bernard was 18. It shouldn't come as a huge surprise that Bernard would begin to abuse drugs while dropping out of school and falling into a life of crime into his adult years.

Still, this is merely one side of a coin. Undoubtedly, the people who know and care about Bernard have seen this troubled side of him, but they also know the loving and kind person who coexists with this baggage. The PSR also describes a father who maintains routine contact with his children in an effort to make sure they do not go down the same paths that he has traversed. For his part, Bernard has gone beyond just talking about how he will live life differently and has taken affirmative steps to try to change. He has availed himself of all the programming he can get his hands on at CCNO, and will continue to strive to make further positive changes while at the BOP (see Exhibit A). Counsel, for his part, has experienced a thoughtful young man who has experienced clarity of thought for the first time in a long time, maybe since he was a child. This is a man who recognizes he has more to give than what he has so far.

**b. NATURE AND CIRCUMSTANCES OF THE OFFENSE; THE SENTENCING RANGE ESTABLISHED BY THE SENTENCING GUIDELINES; THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES—§§ 3553(a)(1) and (a)(4).**

<u>Nature and circumstances of the offense</u>

The offense for which Bernard stands convicted is indisputably serious; however, his behavior must be viewed in context with his history of childhood and adult trauma; his unmanaged substance abuse issues; and the nature of the offense. Bernard pleaded guilty to the offense, has accepted responsibility, and is remorseful for the impact his conduct has had on others.

Bernard makes no excuses for his behavior. He knows that the drug trafficking activities he participated in with his codefendant were dangerous not just for himself but also for the people who risked their lives any time they were willing to abuse the fentanyl Bernard helped provide. For these reasons, Bernard understands he has at least this decade-long price to pay for his behavior.

**c. A PERIOD OF TIME SERVED WITH SUPERVISION PROVIDES JUST PUNISHMENT AND DOES NOT DIMINISH THE SERIOUSNESS OF HIS OFFENSE AND PROVIDES ADEQUATE DETERRENCE AND PROTECTION OF THE PUBLIC—§§ 3553(a)(2)( A)-(C).**

The sentence requested by Bernard does not trivialize the seriousness of his crime. Even at this requested sentence, Bernard will spend nearly a decade in prison for his actions. Furthermore, Bernard will be subject to all of the standard conditions of supervised release in this district, as well as special conditions (particularly mental health and drug treatment) that the Court may choose to impose. If he violates the terms of supervised release, Bernard may be

further imprisoned. Cumulatively, these factors will adequately protect the public from any future crimes that Bernard might contemplate. A sentence of incarceration beyond the requested 120 months is not necessary to deter him from committing similar offenses. Data shows that long prison sentences do little to deter people from committing future crimes. Dep't. of Justice, Office of Justice Programs, Nat'l Institute of Justice, *Five Things About Deterrence* (available at http://nij.gov/five-things/pages/deterrence.aspx). Viewing the findings of research on severity effects in their totality, there is evidence suggesting that short sentences may be a deterrent. However, a consistent finding is that increases in already lengthy sentences produce at best a very modest deterrent effect. *Id.* In fact, lengthy prison sentences may exacerbate recidivism.

Furthermore, the requested sentence itself will have an adequate deterrent effect both on Bernard and upon others who are similarly situated and might engage in similar conduct. To be an effective deterrent, the sentence must not only educate defendants as to the seriousness of the offense, but should make others in the community "aware that similar actions will be punished." *United States v. Coleman*, 370 F. Supp. 2d 661, 681 (S.D. Ohio 2005), rev'd on other grounds, *United States v. White*, 551 F.3d 381 (6th Cir. Ky. 2008). In this case, Bernard is effectively already serving a prison for these allegations. Again, a sentence of 120 months incarceration tells others who may consider similar behavior that they will be punished severely.

Bernard has accepted that he must pay this steep price for the drug trafficking activities in which he engaged. His focus moving forward is to use whatever time he must spend in prison in a constructive manner such that he can be a changed person once his sentence is complete. This Court need not find that a sentence more than 120 months is necessary to accomplish these goals.

## IV.     CONCLUSION.

In light of his history and characteristics, the nature and circumstances of this offense, and the sentencing range established for this offense, Bernard McMillon respectfully requests a sentence of 120 months incarceration. Mr. McMillon submits that this period of incarceration is sufficient, but not greater than necessary, to punish him for his offense, deter others, and to protect the public.

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

     /s/    Soumyajit Dutta
Soumyajit Dutta (OH 76762)
Assistant Federal Public Defender
Office of the Federal Public Defender
10 West Broad Street, Suite 1020
Columbus, Ohio    43215-3469
Telephone: (614) 469-2999
Facsimile: (614) 469-5999
Soumyajit_Dutta@fd.org
*Attorney for Bernard McMillon*

## **CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record on the date of filing.

                                                  /s/ Soumyajit Dutta
                                                  Soumyajit Dutta (OH 76762)
                                                  Soumyajit_Dutta@fd.org